Okay, we'll call the first case on our calendar today is the United States of America v. William Davenport. Mr. Ronjon? Yes, Your Honor. May it please the Court, Nicholas Ronjon from K&L Gates on behalf of the appellant, William Davenport. Judge Fischer, if I may, can I reserve three minutes of my time for rebuttal? That request will be granted, and before we forget, I do want to thank you and your firm for taking this case pro bono. We appreciate the opportunity. We appreciate the service you provided to your client and to the Court. Thank you, Your Honor. Really, the principal issue before the Court is a rather straightforward one, and it's whether the government breached Section 14 of the plea agreement in this case. And our position is that there was a breach, and from it then flowed an ineffective assistance of counsel claim. Section 14 of the plea agreement provided for specific sentencing guidelines, applications, and listed all of the defendant's conduct. One of the things that was not listed was firearm possession, and in fact, at one point it was listed, but it was crossed through by the parties. Who initialed that? It appeared to be initialed by my client, Mr. Davenport, and the AUSA. Are you sure about that? By the AUSA? It's my understanding that it was your client and your client's lawyer. You're right, Your Honor. It's RLM and WD, I think. So it was never initialed by the government? Actually, that's correct, Your Honor. So we don't see an initial by the government there. And the fact of the matter is, in the record, there's nothing, at least in the record, on the negotiations over the plea agreement or when this cross-through occurred as well. So there's record silence of sound in that regard. The language of paragraph 14 that you're relying on and which the government points to repeatedly indicates that these are things that the parties agree to. Not that this is a statement of what the government will or won't do, but it's a set of ideas that both parties were prepared to agree to put before the court, and the elimination of one of them simply means there wasn't an agreement, not that the government couldn't talk about it. Now, what's a persuasive reason for not understanding that to be the import of paragraph 14? Certainly, Your Honor, and we understand the government's position, and I think it's facially reasonable. Our position is that when you look at the plea agreement, you have to look at it from Mr. Davenport's reasonable understanding of the plea agreement. And so just for some context on that, you know, Mr. Davenport was originally charged with a firearm offense, being a felon in possession of a firearm. That count was dismissed as part of the plea agreement. So sort of standing in Mr. Davenport's shoes, I think a reasonable understanding would be that when this laid out the party's recommendations as to the conduct at issue, now that the firearm offense is gone, essentially this idea of a firearm possession is off the table. And to further bolster that understanding, I think, is what happened at the guilty plea hearing right after this. At the guilty plea hearing, the court asked the government to summarize the essential terms of the plea agreement, and the government summarized the terms in the plea agreement here with respect to the defendant's conduct, but made no mention of the fact that it was an open issue as to the firearm possession. Really, is that bear the weight that you're putting on it? Because, you know, as a district court judge, I sat through a lot of those plea colloquies, and the summary given by the government is just that. It's a summary. It's not meant to hit on every open issue. It's just a statement of this is what's going on in the case, and then you turn to the defendant and say, is that right? Is the failure to note that, hey, this is a point we disagreed on, really indicate that the government acknowledged at the district court level it was foreclosed from talking about firearm enhancement? Well, I mean, Governor, I think you make a good point. However, and I think it's a gray area, frankly. The government was asked to summarize the essential terms of the plea agreement. Our position would be if it's an open issue on this firearm enhancement, which increased the sentence by four years, then I think that was the time to sort of lay that out as an essential term. And just as a point of illustration, you know, we said in our brief. Well, they couldn't do that, could they? I mean, when you say essential term of the plea agreement, that was a point which explicitly was not agreed upon. Well, I think the government's position is there was basically, with this cross through means, is there's an agreement to disagree, and this would be set down at the sentencing hearing. So, for example. Well, it was a stipulation, and now it's no longer a stipulation. Isn't that correct? Well, I think that's one reading of the plea agreement, but I still don't understand. So, if it's no longer a stipulation, by definition it's not agreed to. Well, that's correct, Your Honor. I wouldn't disagree with that. I guess where we struggle with. I think the difficulty here is sort of giving your client every benefit of the doubt. It might be understandable to see, perhaps through an exercise of wishful thinking on his part, that it would mean what you say that it means. But is that really the analysis that we're to bring to bear here? Is it enough that his subjective intent or subjective understanding is that by getting it crossed out, that that meant the government would not seek the enhancement? Well, I don't believe that the standard is, you know, what would be his sort of wishful thinking. But I think the standard is that if the cross through produces an ambiguity, then it certainly should be construed in his favor. And I think this case is different than the cases like Scott, the Tenth Circuit case, which we cited and which was originally cited in the Certificate of Appealability, in that there was an unstated condition. And the argument was, well, the unstated enhancement was evidence that that was meant to be precluded. Here you actually have a cross through. And to me it's unclear whether the cross through represented intent to prohibit or intent to keep that issue open. And the problem could have been. That's what I've been trying to get my head around, Mr. Ranjan, is the assertion that if you agree that you're no longer stipulating to something, how does that manifest an intent that you agree, not simply that you're disagreeing and it's an open issue, but that you're not going to talk about it? How do you make the inferential step from the cross through shows it's an open issue to the strike through shows it's off the table? Well, I guess the response to that would be that for all intents and purposes, I think even though this is phrased as the parties agree to recommend, in a certain sense, and this is reflected in the sentencing hearing when the government even says as much, as well as the guilty plea hearing, that it's the government recommending this. So while this is a stipulation and the party's recommendation is sort of a joint stipulation, for all intents and purposes I think it's the government taking a position as to what it will and won't recommend as to the defendant's conduct here. It's almost as if we're talking here and your merit claim in this matter is that the counsel was ineffective because counsel did not object when the government raised the firearm possession question. That's correct. But it seems to me that what you're really trying to argue or maybe should be arguing is that counsel was ineffective at the time of the negotiation of the plea agreement in that the defendant thought that he was going to get absolved from any possible firearm possession and in fact had a portion deleted, but because of the remainder of the document, the government was able to get in the firearm possession through that language. Yeah, you're absolutely right, Your Honor. I mean, you could argue for... That's not before the plea agreement. Sure, sure. And you could certainly argue for counsel's ineffectiveness at that stage, at the pre-sentence report stage when the objection should have been lodged, and then at the sentencing hearing stage. I would say that the sentencing hearing stage is kind of the last clear chance, you know, after there was argument on the fire enhancement. The court said, is there anything else you want to bring to my attention on this firearm enhancement? And sort of there was no objection. I thought there was objection at the PSR stage. There was an objection. I mean, the PSR issues, probation office says enhance for firearm. Your client had admitted that the gun was found in the vehicle. So objection is made. And then government responds to the objection. So you're quite right to say if there's an ambiguity here, we construe it in your favor. But how do you get around the other paragraphs in this plea agreement? Because I think you have to concede that we must construe it as a whole, would you not? That's absolutely correct. So if paragraph 14 were all the agreements said, that ambiguity argument could have a lot more force, it seems to me, than when we look at paragraphs 26 and paragraphs 38. How do you get around those fairly open-ended paragraphs that give the government to do precisely what it did here, namely to come back against the objection raised by your client? Certainly. And the point we made on paragraphs 26 and 38 are they're all qualified to a certain degree, and they're qualified by the government's ability to bring relevant information to the court's attention. And our position is if you read those paragraphs in connection with section 14, section 14 sets forth what is and isn't relevant as it pertains to the defendant's conduct. That's your Scott argument, right? That's your Tenth Circuit Scott case argument coming out again? Not necessarily, Your Honor. I think this is analytically distinct. This is more of a point that these reservations of rights throughout this plea agreement are all qualified in some degree. And certainly, and this is a canon of construction as well, I think found in this court's case, United States v. Rivera, that the specific controls the general as well. So our argument is that all these general reservations of rights have to be read in connection with the idea. But it all comes down to that canon of construction hinges on your assertion that the firearm enhancement is not relevant because there's a strikethrough in 14. That's correct. There's a strikethrough in 14 that gives you that basis for arguing a canon of construction. That's why I say it looks like your Scott argument again. But the government says Scott is different because in the Scott case, the government actively took the position, said these are the positions we're going to take. And they never said that here. That's not what paragraph 14 says. So what's your response to that? Well, in Scott, two responses. In Scott, I think the plea agreement said the parties would take those positions as well. So in a certain sense, it's similar to the plea agreement here where you had the parties recommending a certain thing to the court. So the position is that if the parties say these are things we'll stipulate to, that that's effectively the same as the government saying these are the positions we're going to take. That is, they're locking themselves into a position once they offer a stipulation. It may be different in how it plays out in the end. Our position is that this agreement had stipulated recommendations and the agreement in Scott had stipulated positions, and that may be a difference that matters depending on the conduct of the government, what they did or didn't do. In this case, I don't think there's a dispute because the government actively, in our view, recommended the firearm enhancement. Let me take you to, I know your red light's on, but let me just take you a second to the next step. Let's get beyond the plea agreement itself. But let's keep it in focus. Given the lack of authority that there's a breach of the plea agreement here and the ambiguity of the plea agreement, how can you say that counsel's performance fell below the objective standard of reasonableness, which you need to do to establish the first prong of Strickland? Well, I think counsel has to be presumed to know the law, and the law is that if this is an ambiguous plea agreement, it's construed in the defendant's favor. So we would argue that counsel was objectively deficient. Counsel's faced with an agreement here, which this argument this morning shows, there's certainly a lot of question as to what the agreement actually meant. Certainly, Your Honor. And I think counsel in other areas here Is that a weakness of your deficient performance prong, which you necessarily have to get over? Yeah. I think you raise a good point. Certainly, it seems like a perceived weakness. I could say that the response is that, you know, this Court's precedents have said that where there is a breach and counsel doesn't object, it's deficient performance. I don't think the Court has gotten into the area of where the breach is not obvious or the breach depends on canons and construction. Is there an obligation for counsel to raise that? Could we, if I might just ask one follow-up on this, is there any way that you can show prejudice here? I mean, don't you have to show there would have been some reasonable probability the sentence would have been different if the government hadn't said anything? I guess what I'm trying to ask is what can you point to to show he wouldn't have gotten exactly the same sentence if the government had stood mum? Certainly, Judge. Well, my understanding of the standard on that as stated in the United States v. Zabilski and United States v. Lankford cases is that the use of the wrong guidelines range is going to be prejudicial unless you can tell from the record that it's unambiguous. These are the terms used by the Court in this case. Unambiguous, I'm sorry, Your Honor. Clear and certain that the sentence would have been the same had the different guidelines range been used. If you look at the record in this case, I don't think you can find that unambiguous record that the Court would have employed the same sentence had it considered the other guidelines range. In fact, to the contrary, and we pointed this out in our briefs, you find evidence from the sentencing hearing where the district judge basically said there's a firearm involved, this firearm ratcheted up this offense, and we think that those statements on the record at least made it unclear enough to make this case fall into the typical cases and not the rare cases of Zabilski and I think Flores is the other one. And just on that other note, I mean, Zabilski and Flores are, I think, the two exceptions to the rule, and in both of those cases, the downward variance, I think Flores it was 54 percent, Zabilski 35 percent. In this case, it was a 15 percent downward variance, so I think that's another distinguishing factor. And in Zabilski, actually, the downward variance was so great that it was actually lower than the correct guidelines range. That's different than our case where our bottom of the range was 188 and the downward varied wrong sentence was 199. All right. Roger, we'll have you back on rebuttal. Thank you, Your Honor. Mr. Fisonic. May it please the Court, Your Honors. Christian Fisonic on behalf of the United States. We are here on Section 2255 review, ineffective assistance of counsel, and as this Court has noted, it's the two-pronged test, deficient performance and prejudice. There was no deficient performance here by trial counsel because there was no breach of the plea agreement. Why don't we start in reverse order, though? Of course. We just finished with prejudice, Mr. Fisonic. You rely on Zabilski, but as Mr. Ronjun just pointed out, the Court in that case was pretty clear that that's the rare case. You've got to show it was absolutely clear. You know what the Court would have done in the absence of erroneous calculation of the guidelines. If you lose on the first prong, deficient performance, what leg does the government have to stand on to say that somebody getting an incorrect sentence is not facing prejudice under Strickland? I think we win on the second prong if we lose on the first prong under Zabilski because, number one, Zabilski was on direct appeal. This is on a collateral challenge, which means the defendant has to show that he would have gotten a lesser sentence, and the sentence he would have gotten here would have been within the range that he is asking for, the correct range, which would have been level 33 for his criminal history category of 4. Even if the burden of proof shifts over in that fashion, doesn't the language from Zabilski have meaning in this context, too, where we said that that was the rare case where it was possible to actually discern what the range, that the record didn't affect the actual sentence? Whereas here, it's pretty clear that it did have an impact on the actual sentence. Good arguments on direct appeal may not be good arguments on collateral appeal. That's why I'm pressing you. I want to know why. Why isn't that a good argument in the 2255 setting just as much as it is in the direct appeal setting, even with the shift in the burden of appeal, given the state of the record we've got to look at? Because in the 2255 setting, the defendant has to point to the factors that show that the trial court would have given a lesser sentence. The defendant cannot make... I think you've inverted the presumption. I mean, I have some familiarity with Zabilski. You wrote Zabilski. Yeah. I mean, the only way this harmless error rubric works is when you can look at the sentencing colloquy as an appellate court and discern from the comments of the sentencing judge  had no impact in the sentence. So, you know, here, as Judge Jordan pointed out, not only do we have nothing of that sort, and as Mr. Ranjan pointed out, we have commentary indicating that the firearm enhancement influenced the sentence. Well, if we are... As is normally the case. Enhancements are sought, or our departures are sought, obviously, because counsel believes that that's going to influence the sentence in their client's favor. My response to that, Judge Hardiman, would be if there was a breach of the plea agreement that the government wasn't allowed to argue for that enhancement, the court could still apply it. The court heard evidence, and I think it's incontrovertible, that it wasn't clearly impossible. The defendant possessed a firearm. The court took that into consideration as a relevant factor. I part company with my colleague who says that it became completely relevant once it was stricken from the case. And I think the court could use it, took it into account, gave the sentence, regardless of whether it was an enhancement or a 3553A factor. Now, prejudice may not be your strongest point. Well, I don't think we get there, Your Honor. I don't. We may not get there. But, you know, you had the strike. The language which was stricken, the words, and the defendant possessed a firearm. Yes. Crossed out. And for it to be crossed out, it means it was in, and then it was out. It was offered to the defendant, and the defendant returned it. Yes. It was in the first draft, and then it was taken out, let's call it the second draft, the amended draft. All right. The defendant didn't prepare to play agreement. Of course not. Somebody in your office prepared to play agreement. Yes. Okay. Aren't we to construe these agreements against the draft? That's correct, but we have to construe it in light of what it says. It says, the parties jointly recommend, and as Chief Judge Conner found, by striking it out, all that simply indicates is the defendant doesn't concede or jointly recommend that he possessed a firearm. And I think proof of the understanding of the Middle District's plea, which... Let me take you another step. Okay. It seems to me that the key part of the agreement, so not that the others should be minimized, is Section 14, verses 26 or 38. Section 14 is the case-specific language. The rest of it, we see this language with frequency, is more the boilerplate. So there was a lot of focus on Paragraph 14. Correct. And I would argue this. Paragraph 14 is not all-encompassing of all of the sentencing factors in the case or the ones that are jointly recommended that the court could or could not find. The best analogy I can give you would be this. If, before trial, the government sent the defendant three stipulations, one, that our chemist is qualified, number two, the drugs were crack, and number three, the weight of the drugs were 100 grams, and the defendant sends back initials signed on one and two and not on three, that doesn't take three out of the case, much like it is here. The defendant did not concede, as Judge Conner found, that he possessed a firearm. So that left that in play. Now, I also have support for this, and we didn't stress it too heavily in the brief, we have a footnote, that it seems everybody in the courtroom at that time understood what the language meant. We have learned at defense counsel, we have government counsel, we have probation, and we have the district court. Well, aren't you assuming the end here? The point of this 2255 motion is the assertion that the defense counsel wasn't very learned, that defense counsel let this get passed and shouldn't have let it get passed, that in fact, having agreed to drop the firearm charge and then striking it from the plea agreement led Mr. Davenport to believe it wasn't in the case, and that the government agreed that it wasn't in the case. That's the whole point of the argument, I take it, from their side. And we're here today debating it, such that reasonable minds might have a difference of opinion, but everybody understood it at that time, and that's not ineffective. We don't have a case like Scott, and I dare say Scott isn't controlling here, because I think it's factually different, and the defense counsel did what it did with the law. And I was just, to get back to my point, I was going to point out that these joint recommendations were joint recommendations, because even though the defendant had agreed to an obstruction count, they filed an objection with probation, and there had to be, it was later withdrawn and resolved, but the parties treated these things as the government argues. Well, are you agreeing that this provision is ambiguous, that having stricken the language, there's some ambiguity about what paragraph 14 means and whether it meant that the issue was off the table completely? No, I'm not. As I gave my analogy, I think when you offer to stipulate between 1, 2, and 3, and the defense says, I'll only agree to 1 and 2, that doesn't impliedly read in another provision. So your reasonable minds can disagree comment doesn't mean reasonable minds could disagree about that. You think that's clear? Yeah, I think that's clear, and we think it's clear, and I think obviously everybody in the courtroom that day at the change of plea and at the sentencing thought it was clear. Judge Conner thought it was clear in writing his opinion denying the 2255 relief. I might suggest, though, that there's a big distinction between stipulations to the elements of the crime and stipulation to the specifics of the sentencing guidelines of the elements. Because you start out here with you agree to recommend that the quantity of cocaine hydrochloride attributable is 15 to 50, quantity of crack cocaine attributable is 500 to 1.5, the defendant obstructed or impeded or attempted to obstruct or impede the administration of justice, and then and the defendant possessed a firearm but you strike that out. So, I mean, one could read what took place that you agreed to limit the exposure for sentencing purposes to three specific sections of the sentencing guidelines and not the fourth. Could they not? The defense takes that position. We don't take that position. It's their burden to show that counsel is ineffective. In other words, that that was the controlling position. In this circuit. If you drafted this, we could at least we can at least find that we can construe the ambiguity against the drafter. If there is an ambiguity, I'm not conceding that there is. I would point out that the defense struck it, but did not write the government will not argue that he possessed a firearm. Well, when you say the defense didn't write that in, they did not. I guess the question is whose responsibility is it to clarify something like that? Should the government, should the AUSA on the scene have written there saying this does not mean that the government will not be taking a position? I think after this decision in this case, we may have to put language on our plea agreement that solves any issues that the court might present to us, but I think the answer is no because when the plea agreement is sent to the defendant and his counsel, that is an offer. The striking it out is the counteroffer back to the U.S. Attorney's Office and it was accepted as he didn't concede that he possessed a gun. We got your position on that. I'm sorry. Go ahead. Could you address the distinction between a recommendation and taking a position because we've got some cases out there that talk about those terms of art and the distinction is not entirely clear in my mind. Yeah, I think the distinction is not entirely clear. I think it's very dependent on how the plea agreement is worded, taking a position. If, for example, I think the clearest case would be a binding plea agreement, 11C1C. If something would be struck out of that, like let's say we had proposed a fine of $10,000 and it had been struck out and entered to the court, this court's case law says specifically if it's not in an 11C1C plea agreement, the court cannot sentence to it because it has to be all encompassing and our argument, if you look at paragraph 14, the way it's set up and the way it plays out in this case is it's not an all encompassing position statement of the parties because it doesn't say the parties know that he's criminal history category 4 or the party's position is that there will be a gun enhancement or the party's position is that, you know, such and such, whatever factors or elements play into the case and that's really the difference in Scott because in Scott it was really, I think the way the Tenth Circuit interpreted it was like if people agreed, there were no objections to the PSR, the court sui sponte said, well what about the leadership role enhancement and the victim impact enhancement and that was where there was the violation of the plea agreement because the district court had inquired. Does it matter in this case, Mr. Masonic, whether we call it a position or a recommendation? In this case, I don't think so. I think it is what it is. Because whatever you call it, the position is it was not something which by its removal bound the United States. Exactly. And are you saying that it's neither? I mean, if I understood your answer to my question, you said it's not really a position which I guess impliedly means it was more of a recommendation and there is language in 14 that says the parties agree to recommend. Correct. But I suppose your position is that having been stricken, it's nothing. Right, the parties no longer agree to recommend that. And the fallacy of denying the antecedent, you argue, is that when a party no longer agrees to recommend, it does not follow logically that both parties agree not to recommend. Exactly. Okay. I wanted to ask you if you would respond to the point Mr. Ranjan was making that there was no mention of this in the summary of the plea agreement that the AUSA presented to the court and therefore that should lead one to the conclusion that it really was this firearm enhancement completely off the table. I have 11 seconds left on my clock so I'd ask indulgence to go over. We'll give you a little more time. Thank you, Your Honor. Just because it's not mentioned at the summary as you told my colleague, a summary of the plea is a summary of the plea. It's not binding upon the court. It's just a summary of the salient points for the court and the record. And obviously since firearm was taken out, it's not going to be mentioned as a joint recommendation of the parties even in the AUSA summary. Okay, Mr. Pozzanic, thank you very much. Thank you. We'll go back from counsel on rebuttal. Mr. Ranjan. Thank you, Your Honor. Just a few brief points. The first is, I think a question came up that when the strike-through occurred in Section 14, whose burden was it to then write in there that this is an open issue. And I think there's a great case, and it's almost a case for model drafting for United States attorneys, because it's called United States v. Robertson in the Eastern District of Pennsylvania. We cite it in our brief. Same situation, same Robertson. In that case, you had defendants' offense conduct stipulated in a provision just like this. And the parties then agreed to disagree on one enhancement. And the U.S. attorney actually wrote into that stipulation that the parties agreed to disagree on this enhancement, and it's going to be set forth at a sentencing hearing. Then when it went to the guilty plea hearing stage, when the district judge did the colloquy, the district judge, basically as part of the essential terms of the plea agreement, said this enhancement is an open issue, and the parties agreed to disagree. And I think that's what should have happened here. You know, the government went to great lengths to put in this boilerplate reservation of rights language all throughout the plea agreement, but it never put in the right reservation of rights language in the critical, really the only paragraph that mattered, which was section 14. Once you had that cross-through, there was a risk of ambiguity at that point, and I think it was incumbent upon the government knowing that this plea agreement was going to be construed against them to make sure it was clear at that point. What if it wasn't a cross-through? What if counsel for your client had gotten this draft plea agreement and wrote a letter that said, Dear AUSA, my client's unwilling to agree to this because you have him stipulating to a firearm enhancement. Take it out. And then they took it out and sent you a clean version. Your client signed it. Would the result be different? No, I think you'd have the same result there. I think there would be a question as to whether the court could look at the letter, for example, in construing the plea agreement as extrinsic evidence, but I think that hypothetical would bring us into Scott where you have not a cross-through but an unstated enhancement and whether or not the unstated enhancement should be implied to mean that it should be precluded. But I would, if I understand your question or at least where you're going with it, I would concede that that's probably the weaker case. I think our case is stronger because you have this cross-through and nobody really knew exactly what it meant. Sort of final point, opposing counsel made mention of the fact that, you know, reasonable minds could differ on this plea agreement. Well, if you take him at his word for that, then we should win because that's not the standard. I mean, the standard is what was... Let me clarify and say reasonable minds might differ about what was going on in the courtroom, but the government's impression is that in the courtroom everybody understood exactly what was happening with that. But then he said, but the government's position is there's no ambiguity about the meaning of that paragraph 14 with or without the strikethrough. It's just a set of stipulations and if something isn't stipulated, that doesn't mean we can't talk about it. Certainly, Your Honor, and I think in response to that is there are multiple canons of construction at play here. One is the construction of ambiguity, but even if the government is right that it's unambiguous, and you have this sometimes in civil cases. One party says it's unambiguous, the other party says it's unambiguous, and they both have reasonable readings of the agreement. Under this Court's standard, Mr. Davenport's reasonable understanding should control, regardless of whether there is a finding of an ambiguity. If there's a finding of an ambiguity, furthermore, then that finding should counsel in favor of construing the agreement in his favor. Okay, thank you, Mr. Ronjon. Thank you. Thank you, both counsel, for arguments that were very well done, and the Court will take this matter under review.